## ALGER v. CHENEY LUMBER CO.

CONTRACTS—SPECIFIC PERFORMANCE—ACCOUNTING—STOCKHOLDERS' SUIT—CORPORATIONS—PAROL AGREEMENTS.

In a suit for an accounting between stockholders of a bankrupt corporation and stockholders of another corporation defendant, which the bill charged with breach of a parol agreement to buy all the property of the bankrupt under judicial proceedings and sale, the defense that the minds of the parties never met and no contract was executed, *held*, properly sustained by the finding and decree of the lower court.

Appeal from Wayne; Donovan, J. Submitted January 29, 1913. (Docket No. 77.) Decided April 8, 1913.

Bill by Herbert O. Alger and others against the Cheney Lumber Company and others for an accounting and other relief. From a decree for defendants, complainants appeal. Affirmed.

*Smith, Baldwin & Alexander,* for complainants.

*Stevenson, Carpenter & Butzel, Gray & Gray,* and *Walter B. Hayes,* for defendants.

KUHN, J. The Cheniere Land & Lumber Company was a corporation which was the owner of about 5,208 acres in Ouchita parish, in the State of Louisiana, known as the Cheniere Brake. In the winter preceding the spring of 1907, this company had been declared bankrupt and its affairs were in charge of a trustee in bankruptcy. Its property being advertised for sale, E. C. Drew, who was interested in the affairs of this company, and Charles E. Cheney entered into an arrangement to form a new company to acquire the property of the bankrupt company, including the Cheniere Brake. Each was to furnish one-half of the required money, and each was to get half of the stock of the new company. The capitalization was at first intended to be $100,000, but, at Drew's suggestion, this was increased to $200,000. The exact amount needed was not agreed upon, but it was understood that the property, after it had been acquired at bankruptcy sale, should be turned into the corporation at $150,000, subject to a mortgage debt of $35,000, and that $50,000 of working capital, in addition, would have to be furnished. For personal reasons Drew did not care to appear as a stockholder, and stated that in the organization of the company

he would be represented by G. H. Haynes and his son, W. B. Haynes.

As a result, the Cheney Lumber Company, Limited, was organized March 14, 1907, with a capital stock of $200,000; one-half of the stock being subscribed for by the Cheney interests and the other half by the Haynes interests, and the stock - was subsequently issued in the same proportion. At the bankruptcy sale on June 3, 1907, the property was bid off by the Bankers' Trust Company, of St. Louis, Mo., and, on August 8, 1907, the Cheney Company took it over at a valuation of $150,000, and the deed recites that the Bankers' Trust Company had acquired the mortgage debt of $35,000 and had applied it *pro tanto* upon its bid, and that the remainder of the price had been furnished by the Cheney Company.

The Cheney Company went into possession of the property and proceeded to erect a mill, construct a dam, and make other improvements, and, about a year later, began the manufacture of lumber from timber taken from the land, and continued such business until January, 1910, when it was succeeded by the Dixie Lumber Company, which had acquired the title of the property. In the fall of 1908 the Bankers' Trust Company threatened foreclosure of its mortgage because of default of the Cheney Company in its obligations, and, in order to pay the debt, the Cheney Company gave to the Security Trust Company of Detroit, one of the defendants herein, a mortgage upon the property for $34,670.88, which represented the unpaid amount due the Bankers' Trust Company. A year later default was made in this mortgage, and it was foreclosed and the property was sold to John W. Staley, who then conveyed it to the Dixie Lumber Company, from whom the Security Trust Company took a new mortgage for $36,270.93, being the amount of the old mortgage, with interest. While the Cheney Company was doing business, it borrowed money

from the First National Bank of Detroit, also defendant herein, amounting in the aggregate to $90,000, and in the spring of 1908 gave the bank a bill of sale of some of the lumber. This lien was not foreclosed, but suit was brought upon this indebtedness and judgment obtained by the bank, under which the mill and some other property of the Cheney Company was sold on January 15, 1910, to Mr. Staley, who conveyed it to the Dixie Lumber Company, which has since been in possession of the property.

The complainants in this litigation were stockholders in the Cheniere Land & Lumber Company, and it is their claim that Drew, representing them, and Cheney, on behalf of the Cheney Lumber Company, Limited, made an oral agreement with reference to this property, which was reduced to writing but not signed, under date of April 17, 1907. This agreement was drawn by Allan Scholars, an attorney. The complainants claim that the property was worth about $500,000, and that the agreement provided that the Cheney Company should purchase the entire property of the Cheniere Land & Lumber Company at the bankruptcy sale and should, within 60 days thereafter, convey the brake to the Cypress Pine Lumber Company, Limited, a corporation, which was to be organized by Drew, made up of stockholders of the old Cheniere Company, for a consideration of $150,000, to be represented by five promissory notes, each in the sum of $30,000, payable in five years, with interest at 8 per cent. per annum, subject to a reservation in the Cheney Lumber Company, Limited, of the timber, with a right to re-enter and build the mills and make other improvements; the cost thereof to be added to the consideration price and to be paid therewith, with like interest; the Cheney Lumber Company to account at specified prices for all timber taken until said indebtedness should be extinguished, whereupon all rights of the Cheney Lumber Company

should cease and the land belong absolutely to the Cypress Pine Lumber Company, Limited, the latter in no case to be personally liable; the said purchase price to be paid from the timber taken from the land at the stumpage prices named in the contract.

It is not claimed that the contract was ever signed; but it is urged that the execution of the contract was postponed, at the request of Cheney, in order that the credit of the Cheney Company might not be affected. It is not claimed that either company took any corporate action with regard to this contract. It is conceded that in Louisiana as in Michigan oral contracts relating to lands are void; but the claim is made that the contract was partly performed; that the Cheney Company had accepted its benefits; and that it appears that at least $18,000 was paid to the Cheney Lumber Company by Drew, which moneys had been advanced by stockholders of the Cheniere Company or the Cypress Pine Lumber Company, which went into improvements on the property. It appears from the testimony of Drew that approximately that amount of stock of the Cheney Lumber Company was issued to the stockholders in the Cypress Pine Lumber Company.

The complainants ask to have this agreement enforced and claim that the Dixie Company is but a trustee holding said property and should be made a party defendant to the cause; that the First National Bank of Detroit should account in a subsequent proceeding for all moneys which it has loaned or advanced to the Cheney Lumber Company, and also for moneys received, and that it be determined whether its loans were made in good faith. Counsel for complainants in their brief state that "the claim of the Security Trust Company is undoubtedly a bona fide claim, as there is no proof in the case to the contrary." The defendant Cheney Lumber Company denies that the oral contract of April 17, 1907, was

ever agreed upon. This presents the first and real issue in this case.

The testimony of Mr. Drew, which was taken by deposition, was offered in support of complainants' case. He states that the contract was made and that its execution was purposely postponed at the request of Cheney so as not to affect the credit of the Cheney Company. In this he is supported by the testimony of J. H. Koch, A. T. Burton, Wm. H. Platt, and H. O. Alger, who stated that Mr. Cheney said, at a meeting of the stockholders who resided in Erie, Pa., held at that place in the fall of 1908 (which meeting was attended by Mr. Cheney and Mr. Drew), that he was ready to sign the contract at any time. This testimony is contradicted by the testimony of Mr. Trask and Mr. Murray and by Mr. Cheney. In addition to this testimony, the complainants offered in evidence a series of circulars and correspondence, some of which recite the agreements in the same way as they are now contended for by complainants, and consist largely of appeals for money to aid in the operation of the Cheney Lumber Company. Mr. Cheney, whose testimony was taken in open court, positively denied that such an agreement was ever made, and stated that, when the claimed agreement in writing was presented to him, he refused to sign, never did sign it, and repeatedly said that he never would. He was supported in this testimony by Mr. G. B. Haynes, one of the incorporators of the Cheney Lumber Company, Limited, and its secretary, who stated that Cheney had told him that he would never sign the contract.

Allan Scholars, the attorney, appeared in court as a witness and testified with reference to this contract as follows:

"I drew that contract in part [referring to the unsigned contract purporting to be between the Cheney Company and the Cypress Pine Company]. I think

I took it as Drew presented it to me, and remodeled the articles and reframed it, and the first paragraph read, I think, just as it is now before it was given to me. Just what parts I prepared I do not know. I know I prepared parts of it. I could not give the date of its completion; in fact, I do not think I ever did complete it. I undertook to prepare it as he wanted it, or so it would meet the approval of Mr. Cheney, and he never did approve it. I submitted it to him several times, and there was always some objection to it, and I would word it again at odd times, and kept on and kept it in my possession for some little time. This was before the sale June 3, 1908, and then the negotiations seemed to drop, and I never prepared it to Cheney's satisfaction, and he never approved it at all, and, as I recollect, it was never authorized by the directors of the company. It is not true that the Cheney Lumber Company was acting under this contract when it took over the brake from the Bankers' Trust Company. Mr. Cheney and Mr. Drew had arranged, prior to the organization of the Cheney Company, with an appeal which I had pending for the bankrupt company in the United States circuit court of appeals for the sale of that property; that the same should be discontinued, so that the trustee himself should sell the property at the trustee's sale; and that the lumber company would buy it in through the assistance of the Bankers' Trust Company, just as was done; and afterwards the question was again taken up regarding the contract between the Cypress Pine Lumber Company and the Cheney Company after the sale in June, and it was not confirmed until July, and after that it again came up, and Mr. Cheney absolutely refused to enter into any agreement of that kind; and another instance I remember is that Mr. Cheney and Mr. Drew came from Erie, where a meeting had been held of some of the stockholders, where all knew he and Drew had come together, and they had had some sort of a row because Cheney had refused to sign a certain statement, or would not sign it.

"*The Court:* Then you know their minds never met on that?

"*A.* Because I was trying to prepare a document, which gives to me a certain case, as I saw it, only I

could not get it as they wanted it. I don't think they themselves knew how they wanted it; I know that."

After hearing this testimony, the trial court, who saw and heard the witnesses and who considered the testimony of Scholars persuasive, made the following finding of fact:

"The Cheney Lumber Company, Limited, never agreed to the contract alleged by the complainants, the provisions of which appear in the written draft of April 17, 1907, as it is clear that the minds of the parties never met, and is not obliged to account to the complainants, as prayed for in the bill of complaint."

The court also determined that the loans of the First National Bank to the Cheney Lumber Company, aggregating the principal sum of $90,000, and the mortgage loan of the Security Trust Company to the Cheney Lumber Company, were made in good faith.

A careful reading of the record satisfies us that the court was justified, under the evidence, in coming to this conclusion, and his determination will therefore not be disturbed.

The decree is affirmed, with costs.

STEERE, C. J., and MOORE, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred. MCALVAY, J., did not sit.